ALEXANDER B. CVITAN (SBN 81746),
Email: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720), Members of
Email: marshah@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California  90010-2421
Telephone:  (213) 386-3860, Facsimile:  (2l3) 386-5583

Attorneys for Plaintiff Construction Laborers Trust
Funds for Southern California Administrative Co.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>     vs.<br><br>TRI-COUNTY SANDBLASTING, INC., a California Corporation; PAVEL OSOKIN, an individual,<br><br><br>                    Defendants. | Case No. _____<br><br>COMPLAINT FOR:<br>1)     CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;<br>2)     PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF;<br>3)     BREACH OF FIDUCIARY DUTY<br>[29 U.S.C. §§ 185(a), 1109(a), 1132 & 1145] |

    Comes now Plaintiff CONSTRUCTION LABORERS TRUST FUNDS FOR

SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited

liability company, and alleges, as follows:

-1-

389126v1

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction of this action under Sections 502 and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 and 1145, as an action to collect contributions to multi-employer employee benefit plans, and for breach of fiduciary duties; and under Section 301(a) of the Labor Management Relations Act, (LMRA), 29 U.S.C. § 185(a), as an action to enforce collective bargaining agreements.  Venue is proper in this district in that the plans are administered, performance and breach took place, and the Defendants reside and/or are engaged in business in this district.

## PARTIES

2.     Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company (CLTF) is a Delaware Limited Liability Company.  Plaintiff CLTF appears solely in its capacity as an administrator and agent for collection of several employee benefit plans, and a fiduciary as to those plans, including the Laborers Health and Welfare Trust Fund for Southern California, Construction Laborers Pension Trust for Southern California, Construction Laborers Vacation Trust for Southern California (Vacation Trust), Laborers Training and Re-Training Trust Fund for Southern California,  Fund for Construction Industry Advancement,  Center for Contract Compliance, Laborers Contract Administration Trust Fund for Southern California, Laborers' Trusts Administrative Trust Fund for Southern California, and Southern California Partnership For Jobs (collectively "Trust Funds").  Each of the Trust Funds are express trusts, created by written agreements, are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and jointly-administered labor-management trusts under LMRA § 302(c)(5), 29 U.S.C. §

389126v1

186(c)(5).  The Plaintiff's principal place of business is in, and the Trust Funds are administered in, the County of Los Angeles, State of California.

3.     Plaintiff is a fiduciary as to the Trust Funds, in that it:

    a. Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) contributions to the Trust Funds, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the Trust Funds in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

    b.  Exercises authority or control respecting management or disposition of assets of the Trust Funds, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different Trust Funds, different participants, different time periods and different jobs.

4.     Defendant, Tri-County Sandblasting, Inc. ("Employer"), is a California corporation, licensed to engage in business in the State of California in an industry affecting interstate commerce, with its principal place of business in the City of Westminster, County of Orange, State of California.

5.     Defendant Pavel Osokin ("Owner") is the Secretary and Responsible Managing Officer of the Employer.  Plaintiff is informed and believes, and on that basis alleges, that Owner owns more than ten percent (10%) of the shares of the Employer, that he has check-writing authority over all accounts of the Employer, including those used for payroll and to pay contributions to the Trust Funds, and that

-3-

389126v1

he is responsible for the preparation of payroll, certified payroll reports, and reports to the Trust Funds.

6.      Plaintiff is informed and believes and thereon alleges that Owner acted on behalf of Employer, and in its interest, in determining which employees would be reported to the Trust Funds, the number of hours upon which contributions would be reported as owing, and the amount and timing of payment of contributions.  Plaintiff is further informed and believes, and upon such information and belief alleges that there existed and there now exists a unity of interest, ownership and operation between Owner  and Employer such that any individuality and separateness between Owner  and Employer has ceased to exist in that Owner so controls and dominates Employer as to make any fiction of individuality and separateness between Owner and Employer such a fraud upon their creditors and any adherence to the fiction sanctions fraud and promotes injustices.

## OTHERS

7.      The Southern California District Council of Laborers and its affiliated Local Unions ("Union") was and is a labor organization representing employees in industries affecting commerce.  The Union is not a party to this action.

## AGREEMENTS

8.      Since at least 1980, the Employer has been continuously signatory to collective bargaining agreements with the Laborers Union ("Collective Bargaining Agreements"), setting the terms and conditions of employment of certain of its employees, and agreeing to abide by the terms and conditions of the then-current multi-employer agreements of the Laborers Union, known as Master Labor

-4-

389126v1

Agreements (MLA), for work in the geographical jurisdiction of the 12 Southern California Counties.  The Employer remains signatory to these Collective Bargaining Agreements.

9.     Pursuant to the Collective Bargaining Agreements, including the MLA, the Employer has submitted reports and paid contributions on behalf of certain of its employees to the Trust Funds.  The Employer also received the benefits of the Collective Bargaining Agreements by, among other things, being able to represent itself as signatory to an agreement with the Laborers in order to obtain subcontracts from general contractors who are subject to the MLA.

10.    Pursuant to the Collective Bargaining Agreements, including the MLA, and by the acts of submitting reports and contributions, the Employer adopted and became obligated and bound to all the terms and conditions of the various Trust Agreements which created each of the Trust Funds as they may be constituted in their original form or as they may be subsequently amended.  The Collective Bargaining Agreements, MLAs, and Trust Agreements will hereinafter be collectively referred to as "Agreements."

11.    The Agreements obligate Employer to pay fringe benefit contributions at the rates set forth in the Agreements for each hour worked (or paid for) by employees performing services covered by the Agreements ("Covered Work"). The Employer is required to submit monthly reports, detailing the hours worked or paid for each employee, broken down by project.  Reports and contributions for each month of work are due by the 15th of the following month, and delinquent if not reported and paid by the 20th of the following month.

12.    As to the Vacation Trust, "Contributions to the Fund and any liquidated

389126v1

damages payable in connection therewith, shall be deemed to be, and shall be, a part of the wages due to the employees with respect to whose work such payments are made" and "shall be deemed to be, and shall be treated as, subject to withholding tax and social security and unemployment taxes as a part of the total compensation payable at the end of the individual employer's payroll period during which such work is performed or paid for, but the full per hour contribution shall be transmitted to the Fund."  In other words, contributing employers, such as Employer, deduct the vacation contribution from the pre-tax wages of employees on each paycheck, and then report and transmit that amount, along with other contributions, to the Vacation Trust each month.

13.     By the Agreements and pursuant to 29 U.S.C. § 1132(g)(2)(B), Employer is obligated for payment of interest on delinquent contributions from the due date of the contribution through the payment date of the contribution, at the per annum rate of five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California, effective on the date each contribution is due.

14.     By the Agreements and pursuant to 29 U.S.C. § 1132(g)(2)(C), Employer is obligated to pay to the Trust Funds liquidated damages for detriment caused by the failure of Employer to pay fringe benefit contributions in a timely manner, a sum equal to $25.00 or twenty percent (20%) of the unpaid contributions ($20.00 or 10% to the Laborers Contract Administration Trust Fund), whichever is the greater amount, for each of the Trust Funds to which Employer is required to contribute. The failure of employers to pay contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes the cost of collecting the contributions from employers or third parties, the cost of special processing to restore employee fringe benefit credits because of late

contributions, employee loss of health insurance coverage (even if later restored) and medical harm to participants and beneficiaries who might have foregone medical care when notified that their insurance ceased because of their employer's failure to pay contributions.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the contributions for a given month are later paid.  It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

15.    Under the terms of the Collective Bargaining Agreements and MLAs, employers, including the Employer, agree to subcontract Covered Work only to entities that are signatory to a collective bargaining agreement with the Union.  If an employer subcontracts Covered Work to a non-signatory entity, or allows a subcontractor to subcontract Covered Work to a non-signatory entity, the Employer becomes liable to the Trust Funds in an amount measured by the contributions, interest and liquidated damages that would have been due if a signatory entity had performed the Covered Work.

16.    The Agreements provide the Trust Funds with specific authority to examine and copy all of Employer's payroll and business records which may be pertinent to determining whether Employer has reported all hours worked (or paid for) by employees who perform services covered under the Agreements, and/or has abided by the subcontracting provisions of the Agreements and has paid the appropriate fringe benefit contributions to the Trust Funds.  This includes, among other records, electronic payroll records and bank checking account statements.  The Agreements further provide that the Employer shall be responsible for the costs of such audit, and that if litigation is necessary to enforce the audit obligation, the Employer shall be liable for attorney fees, whether or not any delinquency is discovered.

389126v1

17.     Article XXV.D of the current MLA provides that "The  term "Contractor" for delinquency purposes only, shall include all entities of the Delinquent Contractor, change of name, or change of entity, provided that the delinquent contractor holds at least ten (10%) percent ownership in the new entity."

18.     On public works projects, as defined by California Labor Code §§ 1720, *et. seq.*, the Employer is required to pay no less than the prevailing wage, as determined by the California Department of Industrial Relations (DIR), for work of its employees on those projects.  Under California Labor Code § 1773.1, and prevailing wage determinations of the DIR, this prevailing wage includes amounts required to be paid to the Trust Funds, so that if those contributions are not made, the employees have not been paid their full and complete prevailing wages for their labor on those projects.  The Employer has worked on various public works projects subject to this prevailing wage requirement during the period at issue herein, so that its employees were required to be paid a full prevailing wage on those projects, including contributions to the Trust Funds.

[PARTIAL AUDIT]

19.     Pursuant to the authority in the Agreements to audit employer records, Plaintiff attempted to audit the books and records of the Employer, for the period January 1, 2015 - December 31, 2019 (Audit Period).

20.     Defendants provided only some, but not all, of the records requested and required by the auditors for the Trust Funds to complete an audit for the Audit Period.

21.     On March 24, 2020, Plaintiff issued its audit findings based on the limited records provided, and sent them to the Employer.  The limited records

389126v1

provided revealed a delinquency totaling $297,057.00, which included contributions, liquidated damages, audit costs, and interest to that date (Partial Audit). In particular, the Partial Audit found $215,095.36 unreported and unpaid contributions, $35,709.54 interest on those contributions (to March 13, 2020), $42,852.10 liquidated damages on those contributions, and $3,400.00 audit costs.

22.     The Employer has not paid the Partial Audit, as demanded.

[HIDDEN PAYROLL]

23.      The Partial Audit revealed that Defendants had been paying employees for Covered Work through two different payroll systems. In addition to the regular payroll, the Employer paid employees for some of their hours (on the same jobs) through the VENMO application, a service of PayPal. The Covered Work paid through VENMO was paid at a lower wage rate, and none of those hours were reported to the Trust Funds. Plaintiff is informed and believes that these other payroll systems are paid from accounts of the Owner, or other persons or entities controlled by the Owner, even though the work was performed for the Employer.

24.     Plaintiff is informed and believes that Defendants continues this practice of paying some hours, for the same work to the same employees on the same jobs, through VENMO, at a lower rate, which hours are not reported to the Trust Funds.

25.     Unless enjoined by this Court, the Employer will continue this practice.

/ / /

389126v1

## FIRST CLAIM FOR RELIEF
## AGAINST EMPLOYER
## FOR CONTRIBUTIONS OWED TO TRUST FUNDS
[29 U.S.C. §§ 185, 1132(g)(2) and 1145]

26.     Plaintiff incorporates herein by reference each and every allegation of this Complaint.

27.     As found in the Partial Audit, the Employer is liable for $215,095.36 unreported and unpaid contributions, $35,709.54 interest on those contributions (to March 13, 2020), $42,852.10 liquidated damages on those contributions, and $3,400.00 audit costs, for the Audit Period.

28.     The Employer may be liable for additional contributions, to be discovered and proven at trial, of un-reported contributions.

29.     Under the terms of the Agreements and section 502(g)(2) of ERISA, the Employer is liable to the Trust Funds not only for the amount any delinquent contributions and subcontracting damages found due in an audit,  but also for

      a.  Pre-judgment interest on the delinquent sums at the rates provided in the Agreements;

      b.  Liquidated damages as provided in the Agreements;

      c.  Attorneys' fees and costs;

      d.  Costs of the audit.

/  /  /

389126v1

30.     In sum, the following amounts are known to be due:

| | |
|---|---|
| Known Contributions: | $ 215,095.36 |
| Interest to 3/13/2020: | $   35,709.54 |
| Liquidated Damages: | $   42,852.10 |
| Audit Costs: | $     3,400.00 |
| **TOTAL:** | **$   297,057.00** |

31.     Plaintiff will seek to obtain an audit for additional records not provided in the Audit Period, and also for an audit of the period of January 2020 to current (Second Audit Period).  To the extent those audits, and/or discovery in this action, reveals further delinquencies, additional contributions, interest, liquidated damages and audit costs may be owed.

32.     Pursuant to the Agreements, and ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), the Employer is liable for attorney fees and costs of suit in this action, including any fees incurred in obtaining an audit, regardless of whether a further delinquency is found.

**SECOND CLAIM FOR RELIEF**

**AGAINST EMPLOYER**

**FOR PRELIMINARY AND PERMANENT INJUNCTION**

[29 U.S.C. §§ 1132(g)(2)(E), 1145]

33.     Plaintiff incorporates herein by reference each and every allegation of this Complaint.

34.     As part of its obligations under the Agreements, the Employer is required

389126v1

to submit monthly reports to the Trust Funds indicating the names, social security numbers and number of hours worked by each employee performing work, broken down by project.  The Employer is required to pay to the Trust Funds, at the time the report is submitted, an amount equal to the total number of hours worked (or paid for), by employees performing covered work multiplied by the applicable fringe benefit contribution rates.

35.    The Employer has failed to comply with the provisions of the Agreements by refusing to report and pay contributions on behalf of its employees for all hours of covered work to the Trust Funds.  Instead, it continues to pay for some hours of the same employee on the same jobs, as Covered Work, through the VENMO application, which hours are not reported or paid to the Trust Funds.  The Trust Funds therefore seek injunctive relief to compel the submission of timely paid reports, including ALL hours of Covered Work, on all projects, as required by the Agreements and 29 U.S.C. § 1145.

36.    By reason of Employer's actions, the Trust Funds have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury and damage in that beneficiaries of the Trust Funds acquire eligibility for health and welfare benefits and pension benefits by tabulating the number of hours reported by Employers and all contributing employers during each monthly period.  The funds necessary to pay all anticipated health and welfare claims and pension claims are based upon the number of hours reported to the Trust Funds on behalf of individual employees.  In addition, the amount of benefits payable to all employees for health and welfare and pension claims is actuarially determined on the basis of funds projected to be received from contributing employers.  The failure to report and pay for all the hours worked by employees contributes to the total potential liability of the Trust Funds for health and welfare and pension claims without the Trust Funds being

-12-

389126v1

able to readjust or recompute benefit levels based upon Employers' failure to disclosure and pay contributions on a monthly basis.  Without reports, complete and broken down by project, the Trust Funds lack the information to collect delinquent contributions through mechanic liens, stop payment notices, and/or bond claims.

37.     Plaintiff further requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the Employer, its agents and officers (including Owner) to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for Plaintiff to complete an audit for both the First Audit Period and the Second Audit Period, to determine if additional amounts are due.

38.     The Trust Funds have no adequate or speedy remedy at law and this action for injunctive relief is the Trust Funds' only means of securing relief.

39.     It has been necessary for the Trust Funds to engage counsel to bring this action to compel compliance with the Agreements provide that in the event litigation is necessary with respect to any of the fringe benefit contributions and/or damages against Employer, Employer would pay reasonable attorneys' fees and all other reasonable expenses of collection, including audit fees.

### THIRD CLAIM FOR RELIEF
### AGAINST EMPLOYER AND OWNER
### FOR BREACH OF FIDUCIARY DUTIES
[29 U.S.C. §§ 1104(a), 1109(a), 1132(a)(2)]

40.     Plaintiff incorporates herein by reference each and every allegation of this Complaint.

-13-

389126v1

41.     Employer and Owner are both fiduciaries as to the Trust Funds, in that they each exercise authority or control respecting the management or disposition of assets of the Trust Funds, as alleged herein. As fiduciaries, they each have an obligation to use those assets under their control "(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan   .   .   .   (D) in accordance with the documents and instruments governing the plan."   ERISA § 404(a)(1),  29 U.S.C. § 1104(a)(1).

42.     Pursuant to regulations of the U.S. Department of Labor, 29 C.F.R. § 2510.3-102, the amounts withheld from employee wages meant to be transmitted to the Vacation Trust, became assets of the Vacation Trust "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."  By exercising control over those funds, both Employer and Owner became a fiduciary as to those assets, within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

43.     Pursuant to regulations of the U.S. Department of Labor, 29 C.F.R. § 2510.3-102, the amount of prevailing wages otherwise due as part of the required compensation of employees of Employer, which were meant to be transmitted to the Trust Funds, became assets of the Trust Funds "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets." By exercising control over those funds, Employer and Owner each became a fiduciary as to those assets, within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

44.     Since at least January 2015, the Employer and Owner failed to turn over contributions withheld from employee wages, meant for the Vacation Trust.  By doing

-14-

389126v1

so, the Employer and Owner each breached their fiduciary duties to the Vacation Trust as to their control over those assets.

45.     Since at least January 2015, the Employer and Owner failed to turn over to the Trust Funds contributions which constituted part of the prevailing wage of employees.  By doing so, the Employer and Owner each breached their fiduciary duties to the Trust Funds.

46.     Plaintiff is informed and believes, and upon that basis alleges, that the Employer and Owner continue to withheld Vacation and Prevailing Wage payments for the period of January 2015 to current.  Plaintiff seeks an accounting to determine all amounts withheld since then.

47.     Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), for breaching their fiduciary duties, the Employer and Owner "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate."  Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiff may bring an action for the "appropriate relief" provided in ERISA § 409(a).

48.     Employer and Owner are personally liable for the loss to the Vacation Trust and the Trust Funds for the failure to turn over contributions in their control, in an amount to be determined, for the period of January 2015 to present, including the amount of those withheld contributions and interest thereon.

49.     Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiff is

-15-

entitled to attorney fees and costs of suit for prosecuting this claim for breach of fiduciary duties.

WHEREFORE, the TRUST FUNDS pray for judgment as follows:

I.     FOR THE FIRST CLAIM FOR RELIEF, AGAINST EMPLOYER:

A.     For the known amount of known delinquent contributions of $215,095.36, plus any other delinquent fringe benefit contributions and subcontracting damages which may be proven in Court;

B.     Interest on the contributions and subcontracting damages found due in (A), from the date the contributions became due through judgment, which is currently known to be $35,709.54 as March 13, 2020, plus additional accrued interest at the plan rate(s), pursuant to the Agreements and 29 U.S.C. § 1132(g)(2);

C.     For liquidated damages on the contributions and subcontracting damages found due in (C), including liquidated damages for late-paid reports, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C), which is currently known to be $42,852.10;

D.     For reasonable attorneys' fees and costs of suit, pursuant to Agreements and 29 U.S.C. § 1132(g)(2)(D);

E.     For any further audit costs, pursuant to the Agreements and 29 U.S.C. § 1132(g)(2)(E); and

F.     For such other and further relief as the Court deems proper.

II.    FOR THE SECOND CLAIM FOR RELIEF AGAINST EMPLOYER:

A.     That this Court issue the following preliminary and permanent prohibitory and mandatory injunctions against the Employer, its managing officers,

-16-

agents, managing employees, successors, assigns and all those in active concert or participation with Employer:

      1.1      That Employer be ordered to deliver the following, or cause to be delivered, to the Trust Funds' offices no later than 4:30 p.m., on the 20th day of each month for the duration of the Employer's work under the Agreements:

      1.2      A complete, truthful and accurate "Employers' Monthly Report to Trustees" covering all employees which Employer employed who were covered by the Agreements, together with a breakdown of hours by job site;

      1.3      An affidavit or declaration from a responsible officer of Employer, attesting from his or her own personal knowledge under pain of perjury to the completeness, truthfulness and accuracy of the Employer's Monthly Report to the Trustees; and

      1.4      A cashier's check made payable to the Construction Laborers Trust Funds for Southern California for the full amount of the fringe benefit contributions due on the Employer Monthly Reports for each account for which a report is to be submitted.

    B.    That the Court further order the Employer, its managing officers, agents, managing employees, successors, assigns and all those in active concert or participation with Employer, to provide all records for audit, including direct access to all VENMO accounts in the name of, or controlled by, any Defendant, and any other electronic payroll and accounting data, for the entire period of January 2015 to date;

    C.    For reasonable attorney's fees (whether or not such audit uncovers a further delinquency);

    D.    For costs of suit herein; and

    E.    For such other and further relief as the Court deems proper and just.

389126v1

III.  FOR THE THIRD CLAIM FOR RELIEF, AGAINST THE EMPLOYER AND OWNER, JOINTLY AND SEVERALLY:

    A.  For an accounting, for the period of January 2015 to present, of the contributions withheld from the Vacation Trust and from the Trust Funds for prevailing wages;

    B.  Liability for the amount of contributions found to be withheld from the Vacation Trust and from the Trust Funds for prevailing wages, with interest thereon;

    C.  For attorney fees and costs of suit; and

    D.  For such other and further relief as the Court deems proper and just.


                                        Respectfully Submitted,

DATED: August 10, 2020                  ALEXANDER B. CVITAN,
                                        J. DAVID SACKMAN, and
                                        MARSHA M. HAMASAKI, Members of
                                        REICH, ADELL & CVITAN,
                                        A Professional Law Corporation


                                        By:   /s/ J. David Sackman
                                              J. DAVID SACKMAN
                                              Attorneys for Plaintiff

389126v1

-18-